UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA MORALEZ, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KERN SCHOOLS FEDERAL CREDIT UNION,<br><br>Defendant. | No. 1:15-cv-01444-DAD<br><br>ORDER GRANTING MOTION TO REMAND<br><br>(Doc. No. 16) |

On April 19, 2016, this matter came before the court for hearing on plaintiff Christina Moralez's motion to remand this case to state court. Attorney Taras Kick appeared at the hearing on behalf of plaintiff Moralez. Attorney Andrew Demko appeared on behalf of defendant Kern Schools Federal Credit Union. The court has considered the parties' briefs and oral arguments, and for the reasons set forth below, grants plaintiff's motion to remand.

## BACKGROUND

Plaintiff brought this putative class action in the Kern County Superior Court, serving the complaint on defendant Kern Schools Federal Credit Union ("Kern"), on August 24, 2015. (*See* Doc. Nos. 1 at 2; 1-1.) The complaint states five causes of action: (1) breach of contract; (2) violation of the California Unfair Competition Law; (3) unjust enrichment/restitution; (4) money

1

had and received; and (5) negligence. (Doc. No. 1-1.) In her complaint, plaintiff alleges that defendant's checking account customers must sign an agreement that includes "overdraft" and "overdraft privilege service" provisions governing instances in which an account is overdrawn— i.e., when there are insufficient funds in the checking account to cover a transaction. (*Id.* ¶ 16.) Plaintiff alleges that defendant Kern improperly assessed overdraft fees on some occasions because Kern, contrary to representations made in its account agreement, determined sufficiency of funds based on an account's "available balance" rather than its "actual balance." (*Id.* ¶ 19.) According to plaintiff, "[t]he available balance is the actual balance minus anticipated debits and credits in the future (that may or may not occur)." (*Id.*) Thus, plaintiff alleges, defendant may assess an overdraft fee even when sufficient funds exist in a given checking account at the time of the transaction. (*Id.*) Plaintiff's third cause of action, the subject of this motion for remand, is brought under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"). In light of defendant's practice of charging overdraft fees and its failure to disclose the nature of this practice, plaintiff asserts theories of recovery based on claims that defendant's practice is both unlawful and unfair under the UCL. (*Id.* ¶¶ 46, 48–50.)

On September 23, 2015, defendant removed the action to this court on the basis of federal subject matter jurisdiction. (Doc. No. 1.) On February 24, 2016, plaintiff filed the instant motion to remand for lack of such jurisdiction. (Doc. No. 16.) In moving to remand this action to state court, plaintiff argues that her complaint, and specifically the third cause of action under the UCL, confers no federal question jurisdiction on this court. On April 5, 2016, defendant filed its opposition. (Doc. No. 20.) On April 12, 2016, plaintiff filed her reply. (Doc. No. 21.)

**LEGAL STANDARD**

A defendant in state court may remove a civil action to federal court so long as that case could originally have been filed in federal court. 28 U.S.C. § 1441(a); *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997). Thus, removal of a state action may be based on either diversity jurisdiction or federal question jurisdiction. *City of Chicago*, 522 U.S. at 163; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Removal jurisdiction is based entirely on federal statutory authority. *See* 28 U.S.C. § 1441 et seq. These removal statutes are strictly

construed, and removal jurisdiction is to be rejected in favor of remand to the state court if there are doubts as to the right of removal. *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010); *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction. *Geographic Expeditions*, 599 F.3d at 1106–07; *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Gaus*, 980 F.2d at 566–67. The district court must remand the case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *see also Bruns v. NCUA*, 122 F.3d 1251, 1257 (9th Cir. 1997) (holding that remand for lack of subject matter jurisdiction "is mandatory, not discretionary").[1]

Where the alleged basis for removal to federal court is federal question jurisdiction, the court must determine whether a claim "arises under" federal law using the same "well-pleaded complaint rule" for determining original federal question jurisdiction under 28 U.S.C. § 1331. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998); *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1219 (9th Cir. 2009); *California v. United States*, 215 F.3d 1005, 1014 (9th Cir. 2000). An action "arises under" federal law pursuant to § 1331 if the cause of action (1) is created by federal law, or (2) necessarily requires resolution of a substantial question of federal law. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*. 545 U.S. 308, 314 (2005); *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006); *Cook Inlet Region, Inc. v. Rude*, 690 F.3d 1127, 1130 (9th Cir. 2012). Under the "well-pleaded complaint" rule, "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986). *See also Nevada v. Bank of America Corp., 672 F.3d 661, 674-75 (9th Cir. 2012); Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002). Moreover, courts look to what "necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything in anticipation of avoidance of defenses which it is thought the defendant may interpose."

---

[1] An order remanding a case based on a lack of subject matter jurisdiction is not appealable. 28 U.S.C. § 1447(d); Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 638–39 (2009).

*California*, 215 F.3d at 1014.  Accordingly, "a case may not be removed on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint and both parties concede that the federal defense is the only question truly at issue."  *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1183 (9th Cir. 2002) (quoting *Caterpillar*, 482 U.S. at 392).  *See also Vaden v. Discover Bank*, 556 U.S. 49, 70 (2009) ("It does not suffice to show that a federal question lurks somewhere inside the parties' controversy, or that a defense or counterclaim would arise under federal law.").

## DISCUSSION

### A.   Claim Under California's Unfair Competition Law

Plaintiff's third cause of action alleges defendant's practices relating to overdraft fees constitute acts of unfair competition under the UCL.  (Doc. No. 1-1 ¶¶ 44–52.)  Under the UCL, an act of unfair competition includes "any unlawful, unfair or fraudulent business act or practice," and California courts recognize each of these three prongs as separate and distinct theories of liability.  *See* Cal. Bus. & Prof. Code § 17200; *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (citing *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).  Here, plaintiff alleges liability based on both the unlawful and unfair prongs.  Defendant argues that plaintiff's UCL claim, under any prong, necessarily raises a substantial federal issue because each theory requires resolution of a disputed federal question—namely whether defendant violated federal regulations.

   1.   <u>Safe Harbor</u>

Before addressing specific theories under a UCL claim, defendant asks the court to determine whether the alleged conduct even falls within the ambit of the UCL.  As the California Supreme Court has explained,

> Although the unfair competition law's scope is sweeping, it is not unlimited. . . .  Specific legislation may limit the judiciary's power to declare conduct unfair.  If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination.  When specific legislation provides a "safe harbor," plaintiffs may not use the general unfair competition law to assault that harbor.

*Cel-Tech*, 20 Cal. 4th at 182.  *See also Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1164–

66 (9th Cir. 2012). Defendant argues that federal regulations (in particular, Regulation E, 12 C.F.R. § 1005.17) provide a safe harbor that expressly permits the conduct alleged by plaintiff in her third cause of action. (Doc. No. 20 at 9–11.) Consequently, because the court must make this determination, defendant argues, a substantial federal question exists. (*Id.* at 11.)

The court finds that this potential for a bar to plaintiff's UCL claims, alone, does not confer subject matter jurisdiction on this court. The safe harbor doctrine is treated as an affirmative defense to a UCL claim. *See Cel-Tech*, 20 Cal. 4th at 182–83.[2] As such, a federal court does not have a jurisdiction over plaintiff's UCL claim simply because defendants may raise a defense that touches upon federal law. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 10 (1983) ("For better or worse, under the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law.") (emphasis in original); *California*, 215 F.3d at 1014.

In any event, for purposes of this motion, a determination as to whether any federal regulations provide a safe harbor is practically unnecessary. If, for example, the court recognizes a safe harbor in federal law, as defendant urges it to, then plaintiff's UCL claim would be dismissed completely and there would be no dispute as to this court's lack of subject matter jurisdiction. Conversely, if the court declines to recognize a safe harbor, as it does here, then it must still determine whether plaintiff's state-law claims necessarily raise a federal issue on other grounds.

/////

---

[2] The parties dispute whether the safe harbor doctrine constitutes an affirmative defense. In *Cel-Tech*, the California Supreme Court announced a two-step analysis for courts to undertake in considering an assertion of that doctrine: (1) determine whether a legislative safe harbor exists, and (2) if it does not, determine whether the conduct is in violation of the UCL. *Id.* at 187. Accordingly, the California Supreme Court treated the safe harbor doctrine as imposing a limit on the scope of the UCL, not an additional pleading requirement. *Id.* at 182. *See, e.g.*, *McMillan v. Lowe's Home Centers*, LLC, No. 1:15-cv-00695-DAD-SMS, 2016 WL 2346941, at *6 (E.D. Cal. May 4, 2016) (Mueller, J.) (declining to dismiss a UCL claim for failure to plead the absence of an alleged safe harbor); *PeopleBrowsr, Inc. v. Twitter, Inc.*, No. C-12-6120 EMC, 2013 WL 843032, at *3 (N.D. Cal. Mar. 6, 2013) ("[S]uch a 'safe harbor' operates, in essence, as a federal defense to the 'unfair act' claim.").

### 2. Unlawful Prong

The UCL proscribes any unlawful business practice by covering "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech*, 20 Cal. 4th at 180 (citation and internal quotations omitted). *See also People ex rel. Gallegos v. Pacific Lumber Co.*, 158 Cal. App. 4th 950, 959 (2008); *Cort v. St. Paul Fire and Marine Ins. Companies, Inc.*, 311 F.3d 979, 987 (9th Cir. 2002). In her UCL claim, plaintiff asserts a theory that defendant's practice is unlawful because it violates, at a minimum, 12 C.F.R. §§ 707.4(b)(4) and 740.2, as well as Regulation E, 12 C.F.R. § 1005.17. (Doc. No. 1-1 ¶¶ 46, 48, 49.)

There is no dispute that as pled, plaintiff's claim under the unlawful prong rests solely on a violation of federal law. To the extent plaintiff leaves open the possibility that defendant may have violated other laws through the use of the phrase "at a minimum" (*see id.* ¶ 48), plaintiff fails to articulate a state law basis for unlawfulness anywhere in her complaint.[3] Thus, resolution of plaintiff's UCL claim under this prong necessarily requires determination of the lawfulness of defendant's practices under federal law.

### 3. Unfair Prong

However, the jurisdictional inquiry does not end there. "When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996). *See also Nevada v. Bank of Am. Corp.*, 672 F.3d at 675 (holding that mere reference to federal law in a claim under a Nevada statute similar to the UCL is insufficient to confer federal jurisdiction); *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1046 (9th Cir. 2003) ("[Plaintiff] need not depend on the violation of federal law to bring his UCL claim."). Accordingly, to the extent plaintiff's UCL claim rests on an alternative state law theory, no federal question jurisdiction attaches.

---

[3] In reply, plaintiff alleges theories of unlawfulness based on state statute relating to breach of contract. (Doc. No. 21 at 3 (citing Cal. Civ. Code §§ 1550 & 3300).) However, these allegations do not appear on the face of plaintiff's complaint and cannot be considered to be sufficiently pled.

California courts have not uniformly settled on a single approach to defining "unfair" business practices in a consumer action under the UCL. *Lozano*, 504 F.3d at 736. Prior to 1999, California courts defined "unfair" business practices as those "offend[ing] an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," or where the utility of the defendant's conduct is not outweighed by the gravity of the harm to the victim. *See Cel-Tech*, 20 Cal. 4th at 184. In 1999, the California Supreme Court rejected these definitions, reasoning that they are "too amorphous and provide too little guidance to courts and businesses. *Id.* Looking instead to section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45(a), which similarly prohibits unfair practices, the California Supreme Court held that a finding of unfairness must be "be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id.* at 186–87. However, the court expressly limited its holding to actions based on unfairness to competitors and declined to extend this same standard to consumer actions such as this one. *Id.* at 187 n.12.

In the wake of the decision in *Cel-Tech*, California courts have taken different approaches in consumer actions under the UCL. Some courts have extended the holding in *Cel-Tech* to consumer actions. *See, e.g.*, *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1365–66 (2010); *Byars v. SCME Mortgage Bankers, Inc.*, 109 Cal. App. 4th 1134, 1147 (2003); *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003) ("We agree . . . that *Cel-Tech* narrowed the expansive earlier interpretations of the term 'unfair.'"). Other courts have declined to extend the "tethering" test in favor of the approaches taken before *Cel-Tech* was decided. *See, e.g.*, *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1133 (2014) (applying balancing test); *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006) (same). Still, a third approach emerged. In *Camacho v. Auto. Club of S. California*, the California Court of Appeal for the Second District concluded that the California Supreme Court's decision in *Cel-Tech* effectively overruled prior definitions of "unfair." 142 Cal. App. 4th 1394, 1402 (2006). Finding the *Cel-Tech* definition too restrictive for consumer cases, however, the court looked to jurisprudence arising under section 5 of the FTCA and adopted a three-prong test.

7

*Id.* at 1402–04 ("[T]he factors that define unfairness under section 5 are: (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided.") (citation omitted).

Having considered this split of authority among California courts, the Ninth Circuit has rejected the approach adopted in *Camacho* and concluded that a UCL claim under the unfair prong may proceed under either the tethering test or the balancing test. *Lozano*, 504 F.3d at 736; *see also I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp.2d 989, 1011 (N.D. Cal. 2012) ("In *Lozano*, the Ninth Circuit endorsed the tethering test or balancing test and declined 'to apply the FTC standard [announced in *Camacho*] in the absence of a clear holding from the California Supreme Court.'"). Accordingly, this court must recognize a cause of action if either the tethering test or the balancing test is satisfied here.

Plaintiff appears to recognize the split in authority among California courts by alleging that defendant's practice is unfair under both the tethering test and the balancing test:

> Defendant's practice is also unfair since it has no utility and, even if it did, any utility is outweighed by the gravity of harm to Plaintiff and the Class members. Defendant's practice is also immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits. Further, Defendant's practice contravenes express legislative policy, as set forth in 12 C.F.R. § 707.4(b)(4), 12 C.F.R. § 740.2, and other relevant statutes, regulations and comments.

(Doc. No. 1-1 ¶ 50.) Defendant argues that these allegations fail to present an independent state law theory of liability under the UCL. (Doc. No. 20 at 7–8.) Specifically, according to defendant, "[p]laintiff seems to arrive at the conclusion that Kern's overdraft practices are devoid of utility, outweighed by the gravity of harm to Plaintiff, immoral, unethical, and unscrupulous *because* they violate federal regulations." (*Id.* at 8 (emphasis in original).)

The court agrees that if plaintiff's allegations under the unfair prong rely solely on a theory that liability stems from violation of federal law, then federal question jurisdiction must attach. Indeed, under the tethering test discussed above, plaintiff appears to state a claim based on federal law alone. But, as the Ninth Circuit has concluded, the test for unfairness is broader

and the court must determine whether plaintiff has stated a UCL claim when assessed under the balancing test. *Lozano*, 504 F.3d at 736.

Under the balancing test, a business practice is unfair if the harm it causes a consumer outweighs its purported benefits. *McKell*, 142 Cal. App. 4th at 1473. A determination of unfairness "involves an examination of [the practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer," and "requires a review of the evidence from both parties." *Id.* Here, the court finds that plaintiff has alleged sufficient facts to state a plausible claim under the balancing test without reliance on federal law. In her complaint, plaintiff identifies the harm as having to pay an overdraft fee when her account in fact had sufficient funds to cover at the time of the transaction. (Doc. No. 1-1 ¶¶ 19, 22.) Moreover, plaintiff asserts that an improper assessment of the overdraft fee may itself cause additional harm by further reducing plaintiff's account balance and subjecting her to additional penalties. (*Id.* ¶ 23.) On the other hand, plaintiff alleges that Kern's overdraft policy—assessing fees based on an account's "available balance" rather than its "actual balance"—has little utility because the transaction triggering the fee could otherwise be completed without having to draw funds from another source. (*See id.* ¶ 22.) Accordingly, because plaintiff may prevail in this case on her UCL claim without reliance on federal law, defendant has failed to establish a basis sufficient to confer federal subject matter jurisdiction on this court.

**B.    Plaintiff's Class Definitions**

Relatedly, defendant contends plaintiff's definition of the putative class necessarily depends on a determination of whether defendant violated Regulation E, a federal regulation. In her complaint, plaintiff describes the following putative subclasses:

> **The Sufficient Funds Class**: All California residents who have or have had accounts with Kern Schools Federal Credit Union who incurred overdraft fees for transactions when there were sufficient funds in their checking account to cover the transactions since July 17, 2011.
>
> **The Regulation E Class**: All California residents who have or have had accounts with Kern Schools Federal Credit Union who were opted into the overdraft program for ATM and non-recurring debit card transactions through the use of an opt-in form which provided inaccurate or misleading information on Kern School's overdraft

> program in violation of Regulation E, and were assessed overdraft charges resulting from ATM and/or non-recurring debit card transaction since July 17, 2011.

(Doc. No. 1-1 ¶ 27.) Defendant argues that the proposed Regulation E Class, by itself, is sufficient to confer federal subject matter jurisdiction, and that identification of the putative class requires the court to determine, at minimum, whether Kern violated Regulation E. (Doc. No. 20 at 7.) The court finds this argument unpersuasive. The purpose of class definitions is to assist the court in ascertaining the members of the class. Here, plaintiff's characterization of the Regulation E Class alone does not require a finding of fact as to whether defendant has violated a federal regulation.[4] Plaintiff could have simply defined the Regulation E Class as those customers who opted in to Kern's overdraft program by using particular opt-in forms, without also alleging that such forms violated Regulation E. To the extent these opt-in forms did in fact violate Regulation E, plaintiff states no causes of action requiring a court to determine liability under federal law, as discussed above. Thus, plaintiff's class definitions fail to confer federal question jurisdiction over plaintiff's claims as set forth in her complaint.

## CONCLUSION

Because defendant has failed to meet its burden of showing that this court possesses subject matter jurisdiction over this action, the court must remand the case to the Kern County Superior Court. *See* 28 U.S.C. § 1447(c); *Bruns*, 122 F.3d at 1257.

/////

/////

/////

/////

/////

/////

---

[4] To the extent plaintiff's class definition depends on a determination of liability under Regulation E, such a definition may raise separate ascertainability concerns, which the court need not address here. *See, e.g.*, *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014) ("[C]lass definitions based on the merits of individual members' claims are not sufficiently definite."); *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 914–16 (2001) (holding that a liability-based class definition lacked requisite ascertainability).

10

Accordingly, for the reasons set forth above:

1. Plaintiff's motion to remand this case (Doc. No. 16) is granted;
2. This action is remanded forthwith to the Kern County Superior Court, pursuant to 28 U.S.C. § 1447(c), for lack of subject matter jurisdiction; and
3. The court directs the Clerk of the Court to close this action.

IT IS SO ORDERED.

Dated:   **May 11, 2016**                                         /s/ Dale A. Drozd
                                                                  UNITED STATES DISTRICT JUDGE